UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

CORPUS CHRISTI  DIVISION

Clerk, U.S. District Court
Southern District of Texas
FILED

MAY 0 8 2013

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NUMBER |
| SYLVIA SALINAS RAMIREZ<br>DEBRA JEAN VELASQUEZ | § § § | **C- 13 - 383** |

## INDICTMENT

THE GRAND JURY CHARGES THAT:

At all times material to the indictment:

## **INTRODUCTION**

## **A. MEDICAID**

1.      The federal Medical Assistance program, commonly known as the "Medicaid

program," was a federal health care benefit program signed into law in 1965 as Title XIX of the

Social Security Act for the purpose of providing joint state and federal funds to pay for medical

benefits items or services (hereinafter referred to jointly as "services") to individuals of low

income who were qualified and enrolled as Medicaid beneficiaries.  A state desiring to

participate in, and receive funding from, the federal Medicaid program was required by the

Social Security Act to develop its own "state plan" for medical assistance and obtain approval of

the plan, from the United States Department of Health and Human Services.  Upon approval of

its state plan, each individual state administered its own Medicaid program, subject to the

requirements of the state plan, the Social Security Act, the United States Department of Health

and Human Services and all other applicable state and federal laws.

2.      The Texas Medical Assistance Program also known as the Texas Medicaid program (herein after referred to as "Texas Medicaid") was implemented under the provisions of Title XIX of the federal Social Security Act and Chapter 32 of the Texas Human Resources Code for the purpose of providing joint state and federal funds to pay for covered medical benefits, items, or services (hereinafter referred to jointly as "services") to individuals of low income who were qualified and enrolled as Texas Medicaid beneficiaries.  Texas Medicaid was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

3.      The Texas governmental agency known as the Health and Human Services Commission ("HHSC") was the single state Medicaid agency in Texas which was responsible, subject to oversight by the federal government, for administering Texas Medicaid at the state level.  Federal funding was available to Texas Medicaid only as long as Texas Medicaid complied with the terms of the state plan, with both state and federal laws, and with the rules and regulations established by both the federal government and the State of Texas.

4.      The Texas Medicaid Healthcare Partnership (hereinafter referred to as "TMHP") was under contract with the Texas Health and Human Services Commission ("HHSC") to provide certain administrative functions such as provider enrollment, claims processing and payment, and publishing the Texas Medicaid Provider Procedures Manual for HHSC.  The Texas Medicaid Provider Procedures Manual contained the rules and regulations of Texas Medicaid which were established by the state plan and by HHSC.  The Texas Medicaid Provider Procedures Manual was available to providers and the public in published hard copies and electronically on CD and on the internet.

5.      Texas Medicaid funds were intended to pay for covered services furnished by

2

enrolled Texas Medicaid providers to Texas Medicaid beneficiaries, when such services were provided in accordance with all of the rules, regulations, and laws which governed the Medicaid program and Texas Medicaid. Covered Texas Medicaid services included medical services and procedures furnished by physicians and other health care professionals in their offices; as well as certain products, supplies, and services outside a physician's office, including various services provided in the homes of Texas Medicaid beneficiaries.

6.      Texas Medicaid assigned every person qualified and enrolled as a Texas Medicaid beneficiary a unique personal Texas Medicaid identification number known as a Patient Control Number ("PCN"). Every enrolled Texas Medicaid provider was assigned a unique provider identification number. The unique PCN and unique provider identification numbers were required to be on all claims. A person or entity with a Texas Medicaid provider number could file claims, also known as bills, with Texas Medicaid to obtain reimbursement for covered services which were provided to Texas Medicaid beneficiaries in accordance with the rules, regulations, and laws pertaining to Texas Medicaid.

7.      To receive reimbursement for services to Texas Medicaid beneficiaries, providers submitted or caused the submission of claims to Texas Medicaid either directly or through a billing company. All claims to Texas Medicaid were submitted through TMHP. Claims could be submitted either in paper form or electronically by wire or radio transmissions. Although providers may have sometimes submitted claims in groups for efficiency, every claim was considered individually. Claims were paid either by paper check delivered by the United States Postal Service or by wire or radio transactions known as electronic funds transfers.

8.      Every submitted claim contained a certification that, among other things: (a) the

3

information on the claim form was true, accurate, and complete; (b) the services were provided to the Medicaid beneficiary; and (c) the services listed on the claim were medically indicated.

## B. MANAGED CARE

9.     In response to rising health care costs and national interest in cost-effective ways to provide quality health care, the Texas Legislature directed the State to establish Texas Medicaid managed care programs. Managed care refers to the body of clinical, financial, and organizational activities designed to ensure better access to health care services, improve quality, promote more appropriate utilization of services, and contain costs.

10.     The process of submission of claims directly to Texas Medicaid as described in paragraphs 6, 7, and 8 above, was not eliminated by the implementation of Texas Medicaid managed care programs. The Texas Medicaid managed care programs were an alternative way of delivering medical benefits, items, and services to individuals who were qualified Texas Medicaid beneficiaries. One of the ways Texas Medicaid managed care was delivered was through Managed Care Organizations which were private entities licensed by the Texas Department of Insurance which delivered, and or, managed health services provided to certain Texas Medicaid beneficiaries, on behalf of, and under contact with, Texas Medicaid.

11.     Evercare of Texas LLC, (herinafter "Evercare") was a Managed Care Organization as described in paragraph 10 above, which received federal and state funding from Texas Medicaid to pay for medical benefits items and supplies furnished to Texas Medicaid beneficiaries by persons or entities (sometimes known as "Ancillary Providers") who had contracted with Evercare to provide the medical benefits items and supplies. Evercare was a

4

health care benefit program as defined by Title 18, United States Code, Section 24(b).  Although sometimes claims were submitted to Evercare in groups for efficiency, every claim was considered individually.  Evercare's claims processing and payment was done at, and from, its offices in Salt Lake City, Utah.

12.     Superior Health Plan Inc. (hereinafter "Superior") was a Managed Care Organization as described in paragraph 10 above, which received federal and state funding from Texas Medicaid to pay for medical benefits items and supplies furnished to Texas Medicaid beneficiaries by persons or entities (sometimes known as "Providers") who had contracted with Superior to provide the medical benefits items and supplies to Texas Medicaid beneficiaries. Superior was a health care benefit program as defined by Title 18, United States Code, Section 24(b).  Although sometimes claims were submitted to Superior in groups for efficiency, every claim was considered individually.  Superior's claims processing was done at, and from, its offices in Great Falls, Montana.

## C. HOME HEALTH SERVICES

13.     Texas Medicaid provided home and community based services to persons aged 21 and older who qualified for nursing facility care.  Those services were provided in the person's home as a cost-effective alternative to placement of the Texas Medicaid beneficiary in a nursing facility and provided the Texas Medicaid beneficiaries with meaningful choices regarding their long term care needs.  Services in the home to Texas Medicaid beneficiaries were provided under the home and community based programs of Texas Medicaid.  The home and community based programs of Texas Medicaid were administered by the State of Texas

governmental agency known as the Texas Department of Aging and Disability Services (often referred to as "DADS"). Home and community-based services included providing home health services and personal care or personal assistance for routine ongoing care or services required by Texas Medicaid beneficiaries, in a residence or independent living environment, that enabled the Texas Medicaid beneficiaries to engage in the activities of daily living or to perform the physical functions required for independent living. Home health services included such services as nursing, blood pressure monitoring, diabetes treatment, physical, occupational, speech, or respiratory therapy, and intravenous therapy. Personal care services included providing personal assistance with such things as bathing, dressing, grooming, feeding, toileting, assisting with self-administered medications, transfer or ambulation, and routine hair and skin care. Home services and personal care services were a benefit of Texas Medicaid when the services were provided pursuant to instructions from the beneficiaries' attending physicians and subject to the applicable federal and state rules and regulations.

### D.  MRNG Inc. dba CARING TOUCH HOME HEALTH

14.     MRNG, Inc. (unindicted herein) was a Texas corporation that did business as Caring Touch Provider Services, and also as Caring Touch Home Health (hereinafter "Caring Touch"). Caring Touch was licensed by the  Texas Department of Aging and Disability Services to provide home health services and personal assistance services (hereinafter be referred to collectively as "home health services"). Caring Touch provided home health services in Nueces County, Texas, and in nearby Texas counties. Caring Touch was a home health services provider in the Texas Medicaid program: (1) pursuant to a contract directly with Texas Medicaid; (2) as

an "Ancillary Provider" pursuant to a contract with the Managed Care Organization known as Evercare; (3) as a "Provider" pursuant to a contract with the Managed Care Organization known as Superior.

15.     Caring Touch had an office located in Benavides, Texas, but it also had an office location in Corpus Christi, Texas.  Certain administrative functions of Caring Touch, such as payroll were performed at its office located in Benavides, Texas.

16.     Caring Touch employed individuals called Attendant Care Providers to provide home health services to the Texas Medicaid beneficiaries, which Caring Touch called "clients." Caring Touch provided time sheets to its Attendant Care Providers for each client for each "period of service."  Each "period of service" was generally a two-week time frame.  Each time sheet contained the name of the client, the assigned Attendant Care Provider's name and work schedule for the services and tasks the Attendant Care Provider was required to provide for the client during each scheduled "period of service" as well as the number of hours of services to be provided.

17.     For each client, and for each "period of service" the assigned Attendant Care Provider was required to complete the Caring Touch time sheet by filling out the days home health services were provided to the client, and the actual time spent in providing those home health services.  Attendant Care Providers were required to sign their completed time sheets and certify that the hours recorded on each time sheet were worked and that the assigned tasks listed on each time sheet were completed.  After the time sheets were signed and certified by each assigned Attendant Care Provider, they were given to the Attendant Care Provider's supervisor who then certified the accuracy of the information contained on each time sheet.  Once the time

sheets were completed, signed and certified, bills were sent to Texas Medicaid, Evercare, and Superior for the services and hours listed on each time sheet. Bills were also submitted to Texas Medicaid, Evercare, and Superior, by the defendants described in paragraphs 20 and 21 below, based on altered time sheets, when no time sheets existed, and for more hours of home health services than were listed on the time sheets. Although the false and fraudulent time sheets were not submitted to Texas Medicaid, Evercare, or Superior, the false and fraudulent hours of services listed in the time sheets were on the billings, along with other information including the Medicaid beneficiaries' PCN numbers. All bills to Texas Medicaid were transmitted electronically by means of wire or radio transmissions. All bills to Evercare were transmitted electronically by means of wire or radio transmissions in interstate commerce to Evercare's claims processors in Salt Lake City, Utah. All bills to Superior were transmitted electronically by means of wire or radio transmissions in interstate commerce to Superior's claims processors in Great Falls, Montana.

18.     After the time sheets were completed, signed, and certified as described in paragraph 17 above, a summary report, sometimes referred to as a summary sheet, of the time sheets was prepared and sent to the payroll clerks in Caring Touch's office in Benavides, Texas. The summary reports were used for the purpose of calculating the compensation owed to the Attendant Care Providers for the hours they allegedly worked actually providing home health services to clients. The amount of compensation Caring Touch paid each Attendant Care Provider was calculated from the number of work hours reflected on the summary reports. The hours worked as recorded on the summary reports were not always supported by time sheets.

19      After the payroll checks were prepared at the Caring Touch office in Benavides,

Texas, they were delivered to the Corpus Christi, Texas, office of Caring Touch by courier or through the United States Post Office, and then distributed to the Attendant Care Providers.

## E. DEFENDANTS

20.     Defendant SYLVIA SALINAS RAMIREZ was an employee of Caring Touch in its office in Corpus Christi, Texas.  She held the position of supervisor.  In that position she was responsible for supervision of the Attendant Care Providers.

21.     Defendant DEBRA JEAN VELASQUEZ was an employee of Caring Touch in its office in Corpus Christi, Texas.  She held the positions of office manager and administrator. She personally submitted electronic billings to Texas Medicaid, Evercare, and Superior in the name of Caring Touch, and using the unique provider identification number assigned to Caring Touch.

22.     Defendants SYLVIA SALINAS RAMIREZ and DEBRA JEAN VELASQUEZ were responsible for reviewing and certifying the Attendant Care Providers' time sheets as described in paragraph 17 above, and for preparing and transmitting the summary reports of those time sheets to the office in Benavides, Texas, as described in paragraph 18 above.

## F. MEDICAID BILLINGS AND PAYMENTS

23.     From on or about August 1, 2009, through on or about June 15, 2010, defendants SYLVIA SALINAS RAMIREZ and DEBRA JEAN VELASQUEZ submitted and caused others to submit to Texas Medicaid, Evercare, and Superior, falsified and fraudulent claims for payment from federal and state Medicaid funds, to wit: approximately 628 false and

fraudulent claims in the approximate aggregate sum of $345,393.41 for home health services which were not provided to Texas Medicaid beneficiaries. As a result of said false and fraudulent claims, Texas Medicaid, Evercare, and Superior paid the approximate aggregate sum of $155,127.72.

**COUNT ONE**
**CONSPIRACY TO COMMIT HEALTH CARE FRAUD**

24.    Beginning on or about August 1, 2009, and continuing until on or about June 15, 2010, in the Corpus Christi Division of the Southern District of Texas and elsewhere within the jurisdiction of the Court, the exact dates being unknown to the Grand Jury, defendants

SYLVIA SALINAS RAMIREZ and
DEBRA JEAN VELASQUEZ,

did conspire and agree together, with each other, and with other persons known and unknown to the Grand Jury to knowingly and willfully execute a scheme and artifice to commit certain crimes, namely:

a.    To devise a scheme and artifice to commit the federal criminal offense of health care fraud benefit programs known as Texas Medicaid, Evercare, and Superior to obtain, by false or fraudulent pretenses, representations, or promises, any of the money and or property owned by or under the control of said health care benefit programs in connection with the delivery of or payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347; and

b.    To devise a scheme and artifice to defraud and executed and attempted to execute the plan, scheme and artifice to defraud a health care benefit program, transmitted, or caused to be transmitted, by means of wire, radio, or televison communications in interstate commerce, writings, signs, signals, pictures, or sounds for the purpose of executing the scheme, in violation of Title 18, United States Code, Section 1343.

## OBJECT OF CONSPIRACY

25.     The object and purpose of the conspiracy and scheme was to defraud the health

care benefit programs known as Texas Medicaid, Evercare, and Superior, and to obtain by false

or fraudulent pretenses, representations, or promises, any of the money or property owned by, or

under the custody or control of the health care benefit programs known as Texas Medicaid,

Evercare and Superior in connection with the delivery of, or payment for, health care benefits,

items, or services.

## MANNER AND MEANS

26.     In order to execute and carry out their illegal activities, defendants SYLVIA

SALINAS RAMIREZ and DEBRA JEAN VELASQUEZ committed, aided and abetted the

commission, or otherwise caused others to commit one or more of the following acts:

(a)     Defendants did not notify Caring Touch when Attendant Care Providers quit
        working for Caring Touch, or otherwise stopped providing home health services
        to Caring Touch Medicaid clients.

(b)     Defendants falsified, forged, and otherwise created or caused others to falsify,
        forge, and otherwise create, falsified and fraudulent time sheets to make it appear
        that individuals who had at one time been Caring Touch Attendant Care
        Providers, but who were no longer working as Attendant Care Providers for
        Caring Touch, or who had otherwise stopped providing home health services had,
        in fact continued to provide home health care services for Caring Touch's
        Medicaid clients, when, in fact, the services had not been provided.

(c)     Defendants forged, or caused others to forge, the signatures of former Caring
        Touch Attendant Care Providers on the falsified and fraudulent time sheets
        described in paragraph 26(b) above.

(d)     Defendants submitted, or caused others to submit, false and fraudulent bills to
        Texas Medicaid, Evercare, and Superior in the name of Caring Touch for home
        health services, which had not been provided.

11

(e)   Defendants submitted, or caused others to submit, false and fraudulent bills to Texas Medicaid, Evercare, and Superior by means of wire and or radio transmissions, for home health services that had not been provided.  The false and fraudulent claims defendants submitted, or caused others to submit, to Evercare and Superior by means of wire and or radio communications transmissions were writings, signs, signals, pictures, or sounds which were transmitted in interstate commerce.

(f)   Defendants' false and fraudulent claims they submitted, or caused others to submit, to Texas Medicaid, Evercare, and Superior would, and did, cause said health care benefit programs to deposit matters in the mail, such as explanations of benefits, for delivery by the United States Postal Service, and to transmit writings, signs, signals or pictures via wire transmission in interstate commerce, such as the payments for the bills.  The use of the United States Postal Service and wire transmissions in interstate commerce was done for the purpose of executing the defendants' scheme to defraud.

(g)   Defendants created or caused others to create false and fraudulent summary reports of hours of home health services allegedly worked for Caring Touch Medicaid clients as reflected by the fraudulent time sheets described in paragraph 26(b) above.  The summary reports were also false and fraudulent because they reported hours of alleged home health services which were not worked or provided and not supported by any legitimate time sheets.  Defendants then sent, or caused others to send, said false and fraudulent summary reports from the Caring Touch facility in Corpus Christi, Texas, to the Caring Touch facility in Benavides, Texas for the purpose of causing persons in Benavides, Texas to prepare payroll checks based upon said summary reports.

(h)   Payroll checks to compensate the alleged "Attendant Care Providers" for the home health services listed on the summary reports were prepared at the Caring Touch facility in Benavides, Texas, based on the false and fraudulent information contained in the summary reports described in paragraph 26(g) above.

(i)   Defendants caused Caring Touch to send the payroll checks described in paragraph 26(h) payable to the Attendant Care Providers, who had not provided any of the home health services listed on the false and fraudulent time sheets and summary reports, to themselves.  Said checks were transmitted from Benavides, Texas, to defendants.

(j)   Upon receipt of the checks described in paragraphs 26(h) and (i) above, defendants, without legal authority, endorsed said checks by forging the payees' signatures.  Thereafter, defendants, without legal authority, cashed the forged checks using one or more means of identification of the payees, including identification documents taken from Caring Touch's "employee" files.

12

(k)     Defendants divided the net proceeds from the illegally obtained checks among themselves and their family members.

(l)     Defendants SYLVIA SALINAS RAMIREZ and DEBRA JEAN VELASQUEZ submitted false and fraudulent claims, and caused false and fraudulent claims to be submitted, to the health care benefit programs known as Texas Medicaid, Evercare and Superior, for medical benefits, items, and services which were not provided to the Texas Medicaid beneficiaries and, then divided and shared part of the money paid by Texas Medicaid, Evercare and Superior to Caring Touch as a result of the false and fraudulent claims.

In violation of Title 18, United States Code, Section 1349.

## COUNTS TWO THROUGH SEVEN
## HEALTH CARE FRAUD

27.     The Grand Jury incorporates by reference paragraphs 1 through 23, 25, and 26 as though fully restated and re-alleged herein.

28.     Beginning on or about August 1, 2009, and continuing until on or about June 15, 2010, in the Corpus Christi Division of the Southern District of Texas and elsewhere within the jurisdiction of the Court, the exact dates being unknown to the Grand Jury, defendants

SYLVIA SALINAS RAMIREZ and
DEBRA JEAN VELASQUEZ,

did knowingly and willfully execute and attempt to execute a scheme or artifice to defraud the health care benefit programs known as Texas Medicaid, Evercare, and Superior, and to obtain by false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of the health care benefit programs known as Texas Medicaid, Evercare and Superior, in connection with the delivery of, or payment for, health care benefits, items, or services.  Defendants submitted, aided, abetted, counseled, commanded, induced, procured or otherwise facilitated or caused each other and others to submit false and fraudulent

13

claims to Texas Medicaid, Evercare, and Superior for medical benefits, items, and services which
were not provided, including, but not limited to the following:

| Count | Patient (Unindicted herein) | Last Four Digits of Patient's Medicaid Number | Dates of Alleged Services (On or about) | Date Billed (On or about) | Hours of Care Billed | Hours of Care Actually Provided | Fraudulent Amount Billed | Fraudulent Amount Paid |
|---|---|---|---|---|---|---|---|---|
| 2 | R. A. C. | 5030 | 8/1/09 through 8/15/09 | 8/25/09 | 37 | 24.5 | $136.57 | $136.75 |
| 3 | L. H. | 5929 | 11/1/09 through 11/15/09 | 11/17/09 | 47 | 42.5 | $50.02 | $50.02 |
| 4 | P. McD | 5189 | 11/16/09 through 11/30/09 | 12/03/09 | 44 | 0 | $481.36 | $481.36 |
| 5 | T. S. | 8682 | 4/1/10 through 4/15/10 | 4/16/10 | 37.5 | 0 | $433.50 | $433.50 |
| 6 | M.E. | 4275 | 5/1/10 through 5/15/10 | 5/17/10 | 83 | 0 | $1,050.78 | $967.78 |
| 7 | I. C. | 9201 | 5/1/10 through 5/15/10 | 5/17/10 | 44 | 0 | $525.36 | $525.36 |

All in violation of Title 18, United States Code, Sections 2 and 1347.

## COUNTS EIGHT THROUGH ELEVEN
## WIRE FRAUD

29.    The Grand Jury incorporates by reference Paragraphs 1 through 23, 25, and 26 as
though fully restated and re-alleged herein.

30.    Beginning on or about August 1, 2009 and continuing until on or about June 15,

14

2010, in the Corpus Christi Division of the Southern District of Texas and elsewhere within the

jurisdiction of the Court, the exact dates being unknown to the Grand Jury, defendants

SYLVIA SALINAS RAMIREZ and
DEBRA JEAN VELASQUEZ,

having devised and having intended to devise a scheme or artifice to defraud, or for obtaining

money or property by means of false or fraudulent pretenses, representations, or promises, for the

purpose of executing such scheme or artifice, transmitted, or caused to be transmitted

approximately 562 false and fraudulent, writings, signs, signals, pictures, or sounds by means of

wire, radio, or television communication in interstate commerce, for the purpose of obtaining

payment for medical benefits items and services which were not provided, including, but not

limited to the following:

| Count | Patient (Unindicted herein) | Underlying fraudulent claim | Date Billed (On or about) | Hours of Care Billed | Hours of Care Actually Provided | Fraudulent Amount Billed | Fraudulent Claim Wired to |
|-------|------|---------|----------|------|------|-----------|-----------|
| 8 | R. A. C. | Count 2 | 8/25/09 | 37 | 24.5 | $135.75 | Salt Lake City Utah |
| 9 | P. McD | Count 4 | 12/03/09 | 44 | 0 | $481.36 | Salt Lake City Utah |
| 10 | M.E. | Count 6 | 5/17/10 | 83 | 0 | $1,050.78 | Great Falls Montana |
| 11 | I. C. | Count 7 | 5/17/10 | 44 | 0 | $525.36 | Great Falls Montana |

All in violation of Title 18, United States Code, Sections 2 and 1343.

**COUNTS TWELVE THROUGH FOURTEEN
AGGRAVATED IDENTIFY THEFT**

31.     The Grand Jury incorporates by reference paragraphs 1 through 23, 25, and 26 as

15

though fully restated and re-alleged herein.

32.     Beginning on or about August 1, 2009, and continuing until on or about June 15, 2010, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, the exact dates being unknown to the Grand Jury, defendants

SYLVIA SALINAS RAMIREZ and
DEBRA JEAN VELASQUEZ,

during and in relation to a felony violation of Chapter 63 of the United States Code, did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, including but not limited to the following:

| Count | Person (unindicted herein) whose identifying information was illegally used | Means of identification illegally used for | Dates of identity theft (On or about) |
|---|---|---|---|
| 12 | B. R. (Alleged Attendant Care Provider used in Count 2) | To cash payroll check #006980 | 8/31/09 |
| 13 | C. R. H. (Alleged Attendant Care Provider used in Count 4) | To cash payroll check #8069 | 12/14/09 |
| 14 | C. R. H. (Alleged Attendant Care Provider used in Count 5) | To cash payroll check #9614 | 5/03/10 |

All in violation of Title 18, United States Code, Sections 2 and 1028A.

A TRUE BILL:
ORIGINAL SIGNATURE ON FILE
FOREPERSON OF THE GRAND JURY

KENNETH MAGIDSON
UNITED STATES ATTORNEY

By: _Rex G Beasley_
REX G. BEASLEY
Special Assistant United States Attorney

16